UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-100 (JRT/HB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) PLEA AGREEMENT AND |
| | ) SENTENCING STIPULATIONS |
| CHRISTOPHER MICHAEL KA, | ) |
| | ) |
| Defendant. | ) |

The United States of America and the defendant, CHRISTOPHER MICHAEL KA, agree to resolve this case on the following terms and conditions. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. It does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, which charges him with being an Unlawful Controlled Substance User in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). In exchange for the concessions made herein, the United States agrees to move to dismiss Count 2 of the Indictment at the time of sentencing. Counts 2 charges the defendant with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c). The United States also agrees to not charge the defendant under 18 U.S.C. § 924(c) for possessing a firearm during and in relation to a federal drug-trafficking offense, which would require a mandatory 60-month sentence consecutive to any sentence imposed for his offense of conviction.

SCANNED
SEP 13 2021
U.S. DISTRICT COURT MPLS

2.  **Factual Basis**.  The defendant stipulates and agrees to the following facts and further agrees that, were this matter to go to trial, the United States would prove the following facts beyond a reasonable doubt:

a.  On March 11, 2021, at approximately 4:00 p.m., near 38th Street and Chicago Avenue, now commonly known as George Floyd Square (GFS), in Minneapolis, Minnesota, Minneapolis Police observed (both physically and on surveillance camera) a male wearing a black hooded sweatshirt, white face mask, white pants, and tan boots, later identified as the defendant, in open possession of an apparent long gun with a banana-style extended magazine attached, which the defendant then placed into a black backpack the defendant was carrying.

b.  Plainclothes officers in the area observed and conducted surveillance on the defendant for approximately two hours.  During that time, officers observed the defendant repeatedly go in and out of a dark-colored SUV parked in the middle of the street, carry the backpack (with the firearm in it) while walking around the walled-off intersection from store to store, including CUP Foods, and while wearing the backpack, move to and from different vehicles that approached the area for short amounts of time, making police suspect that the defendant was conducting drug transactions.

c.  At one point, officers witnessed the defendant open the black backpack and partially remove the firearm with the extended magazine, show the weapon to another person in the area, put the weapon back in the backpack, and place the backpack over his shoulder.  Officers also observed the defendant wearing the backpack on the front of his chest while keeping his hand inside the backpack where the firearm was located.

d.  At approximately 6:45 p.m., officers observed the defendant enter the passenger seat of a silver Chrysler minivan, while carrying the black backpack and place the backpack on the floor of the van.  Officers observed the minivan begin to leave the area of GFS by driving up and down several allies, and finally exiting the GFS area, eastbound on 38th Street, with the defendant seated in the front passenger's seat.  Unmarked squads followed the van as it left the area and radioed to marked squads to conduct a traffic stop of the minivan.

e.  When the minivan pulled into a store parking lot near 40th Street and Bloomington Avenue, marked squads pulled in behind the van with their overhead lights on.  The defendant exited the passenger seat before being ordered to and partially raised his hands above his head.  An officer identified the defendant as the same male he observed in possession of the firearm and backpack at GFS.  As

officers approached, the defendant ran from police into an alleyway, and police began a foot chase, yelling orders to stop and that he was under arrest.

   f. Other units moved in to block the defendant's flight, and he continued fleeing on foot in another direction. As officer's continued to give chase, the defendant suddenly stopped running and raised his hands on a residential sidewalk and surrendered.

   g. The defendant refused to identify himself, but was eventually identified at the Hennepin County Jail. During a search incident to arrest, police removed an unlabeled prescription pill bottle from the defendant's right front pocket. The pill bottle contained a plastic baggie tied off at the top which had 53 10mg oxycodone pills inside. Police also found approximately $345 cash in the defendant's pocket.

   h. Inside the minivan, police found the black backpack the defendant was carrying throughout GFS, on the floor of the minivan between and behind the two front seats. The backpack had an extended firearm magazine sticking out of it. Police opened the backpack and removed a Zastava, model PAP M92PV, 7.62x39mm-caliber semiautomatic pistol, bearing serial number M92PV025491, with an attached extended banana-style magazine ("the firearm"). The magazine contained 31 rounds of ammunition. Police also located a bottle containing a quantity of suspected liquid "lean," which is a highly addictive form of codeine, and a bag of marijuana in the backpack.

   i. During a later warrant-authorized search of the defendant's residence, police located a garbage bag in the garage, which contained a loaded Mossberg model 715T, .22-caliber semiautomatic rifle, with an attached scope, shoulder stock, and high-capacity magazine loaded with approximately 25 .22-caliber rounds of ammunition, bearing serial number KD3221016. The garbage bag was later forensically determined to contain the defendant's fingerprints. Police also located a digital scale.

   j. The defendant agrees and stipulates that each of the firearms identified above is a "firearm" as defined in 18 U.S.C. § 921(a)(3), and that each firearm, as statutorily defined, was not manufactured in the State of Minnesota. The defendant further agrees and stipulates that each firearm therefore necessarily traveled in or affected interstate or foreign commerce prior to being in the defendant's possession in the State and District of Minnesota as specified above. The defendant agrees and stipulates that he knowingly and voluntarily possessed the firearms as described above. The defendant also admits and agrees that he knew he was an unlawful user of a controlled substance, as defined in 21 U.S.C. § 802, when he possessed each firearm identified above.

3. **Waiver of Pretrial Motions**. The defendant understands that he has certain rights to file pretrial motions in this case. As part of this plea agreement, and based upon the concessions of the United States contained herein, the defendant knowingly, willingly, and voluntarily agrees to withdraw any pending pretrial motions already filed and to give up the right to file any additional pretrial motions.

4. **Statutory Penalties**. The parties agree that Count 1 of the Indictment carries the following statutory penalties:

   a. a maximum term of 10 years' imprisonment, a Class C felony. (18 U.S.C. §§ 922(g)(1), 924(a)(2), and 3559(a)(3));

   b. a supervised-release term of not more than 3 years. (18 U.S.C. §§ 3559(a)(3) and 3583(b)(2));

   c. a fine of up to $250,000. (18 U.S.C. §§ 924(a)(2) and 3571(b)(3)); and

   d. a mandatory special assessment of $100. (18 U.S.C. § 3013(a)(2)(A)).

5. **Guidelines Calculations**. The parties acknowledge the defendant will be sentenced in accordance with Title 18, Chapter 227 (18 U.S.C. §§ 3551 – 3586) and with reference to the advisory United States Sentencing Guidelines. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following Guidelines calculations:

   a. **Base Offense Level**. The parties agree that because the offense involved a semiautomatic firearm capable of accepting a large-capacity magazine, and the defendant was a prohibited person at the time the defendant committed the instant offense, the <u>base offense level is 20</u>. USSG § 2K2.1(a)(4)(B).

b. **Specific Offense Characteristics**.  The United States asserts that because the defendant used or possessed a firearm in connection with another felony offense, the base offense level should be <u>increased by 4 levels</u>.  USSG § 2K2.1(b)(6)(B).  The defendant reserves the right to oppose this enhancement at sentencing.  The parties agree that no other specific offense characteristics or adjustments apply.

After applying the specific offense characteristics, the <u>adjusted total offense level is 24</u> (20+4)

c. **Chapter Three Adjustments**.  The parties agree that, other than as provided for in paragraph d. below for acceptance of responsibility, no other Chapter Three adjustments apply.

d. **Acceptance of Responsibility.**  The parties agree that if and only if the defendant (1) provides full, complete and truthful disclosures to the United States Probation and Pretrial Service Office, including providing complete, accurate and truthful financial information; (2) testifies truthfully during the change of plea and sentencing hearings; (3) complies with this agreement; and (4) undertakes no act inconsistent with acceptance of responsibility before the time of sentencing, the United States will recommend that the defendant receive a <u>two-level reduction</u> for acceptance of responsibility under USSG § 3E1.1(a), and will move for an <u>additional one-level reduction</u> under § 3E1.1(b).  The defendant understands that any reduction for acceptance of responsibility shall be determined by the Court in its discretion.  After applying all adjustments, the **total offense level is 21** (24-3).

e. **Criminal History Category**.  Based on the information currently available and known to the parties, the parties believe the defendant has a criminal history category of **II**.  The defendant's actual criminal history, however, will be determined by the Court based on the information presented in the presentence investigation report and the parties' arguments at the time of sentencing.

f. **Guideline Range**.  If the total offense level is 21, and the criminal history category is II, the advisory Guidelines range is <u>41 to 51 months' imprisonment</u>.

g. **Fine Range**.  If the total offense level is 21, the applicable fine range is $15,000 to $150,000.  USSG § 5E1.2(c)(3).

h. **Special Assessments**.  The Guidelines require payment of a special assessment in the amount of $100.00 for each count of conviction.  USSG § 5E1.3.

The defendant understands and agrees that this special assessment is due and payable at the time of sentencing.

  i. **Supervised Release**. The Guidelines require a term of supervised release of at least 1 year but not more than 3 years. USSG § 5D1.2(a)(2); 18 U.S.C. § 3583(b)(2).

6.  **Discretion of the Court**. The foregoing stipulations bind the parties but not the Court. The parties understand the Sentencing Guidelines are advisory and their application is a matter falling solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines' factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines the applicable Guidelines' calculations or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement on that basis, and the defendant will be sentenced pursuant to the Court's determinations.

7.  **Revocation of Supervised Release**. The defendant understands that if he were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

8.  **Forfeitures**. The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), the following firearms and associated accessories and ammunition: (1) a Zastava, model PAP M92PV, 7.62x39mm-caliber semiautomatic pistol, bearing serial number M92PV025491, with an attached extended banana-style magazine and 31 rounds of ammunition seized therewith; and (2) a Mossberg

model 715T, .22-caliber semiautomatic rifle, with an attached scope, shoulder stock, and high-capacity magazine loaded with approximately 25 .22-caliber rounds of ammunition, bearing serial number KD3221016.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and consents to the destruction of the firearms and ammunition. The defendant agrees that the firearms are subject to forfeiture because they were involved in knowing violations of federal law.

9. **Waiver of Freedom of Information Act and Privacy Act**. In exchange for the concessions of the United States made herein, the defendant agrees to waive all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

10. **Waiver of Sentencing Appeal and Postconviction Petition**. The parties are expressly aware that Title 18, United States Code, Section 3742, affords them the right to appeal the sentence imposed in this case. Acknowledging this right, the parties hereby knowingly and voluntarily waive all rights conferred by Title 18, United States Code, Section 3742, to appeal the sentence imposed, except the defendant may appeal his sentence if the sentence imposed is greater than 51 months, and the United States may appeal if the sentence imposed is less than 41 months. The defendant also understands his

rights to file and seek a postconviction civil petition collaterally contesting the legality of his conviction or sentence and, except for a claim of ineffective assistance of counsel, the defendant knowingly and voluntarily waives all rights to contest the defendant's conviction or sentence in any collateral postconviction proceeding, including one pursuant to Title 28, United States Code, Section 2255. The defendant has discussed these rights with the defendant's counsel and understands the rights being waived.

11.   **Complete Agreement**.   This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.

Dated: September 13, 2021

W. ANDERS FOLK
Acting United States Attorney

BY: BENJAMIN BEJAR
Assistant United States Attorney

Dated: Sep. 13. 21

CHRISTOPHER MICHAEL KA
Defendant

Dated: 9/13/21

STEVEN J. WRIGHT, ESQ.
Attorney for Defendant